MARY KATHLEEN LUDEMANN, Individually and as Administratrix of the Estate of LAUREN ALINE LUDEMANN (deceased), Plaintiff,
v.
BRADFORD CLINIC, INC., Defendant.
No. COA07-50
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Troutman Sanders LLP, by Patricia P. Kerner, for Plaintiff-Appellant.
Parker Poe Adams & Bernstein, LLP, by Harvey L. Cosper, Jr., Richard J. Rivera and Leigh A. Kite, for Defendant-Appellee.
STEPHENS, Judge.

I. FACTS AND PROCEDURE
Plaintiff filed a complaint on 12 June 2006 against Bradford Clinic, Inc., Presbyterian Healthcare Associates Corp., Presbyterian Specialty Hospital Corp., Presbyterian Regional Healthcare Corp., Novant Health Southern Piedmont Region, LLC, and Novant Health, Inc., alleging wrongful death of Plaintiff's daughter as a result of negligent obstetrical care by the doctors and staff of the "Bradford Clinic." The statute of limitations for Plaintiff's action expired the following day. On 27 July 2006, Defendant Bradford Clinic, Inc. filed a Motion to Dismiss and Alternative Motion for Summary Judgment on the grounds that they were not a proper party to the action. They argued that Women's Regional Healthcare, and not the Bradford Clinic, Inc., owned the "Bradford Clinic" at the time of Plaintiff's prenatal care and the birth of her child. On 6 September 2006, Plaintiff filed a Motion to Amend Complaint to name Women's Regional Healthcare as the sole defendant. Plaintiff voluntarily dismissed the other Defendants.
After hearing the motions, the Honorable Yvonne Mims Evans entered an order granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion to Amend. Plaintiff timely filed Notice of Appeal. The sole issue on appeal is whether Judge Evans erred in denying Plaintiff's Motion to Amend the complaint.

A. Bradford Clinic
The "Bradford Clinic" was the trade name of an obstetrical and gynecological practice that provided service to women in Mecklenburg County. Ownership of the Bradford Clinic changed a number of times after 1970. Between 1970 and 1994, the Bradford Clinic, P.A. did business as the "Bradford Clinic." On 12 May 1994, the Bradford Clinic, P.A. filed Articles of Restatement with the North Carolina Secretary of State and changed from the Bradford Clinic, P.A. to the Bradford Clinic, Inc. On 18 May 1994, the Bradford Clinic, Inc. ceased to exist upon a merger into Presbyterian Healthcare Associates Corp. Presbyterian Healthcare Associates Corp. subsequently operated and did business as the "Bradford Clinic" until 22 March 1996 when it merged into Presbyterian Specialty Hospital Corp., with the surviving corporation becoming Presbyterian Regional Healthcare Corp. Presbyterian Regional Healthcare Corp. then continued the operation of the "Bradford Clinic."
On 2 May 2000, Women's Regional Healthcare, P.A. ("WRHC") filed Articles of Incorporation with the North Carolina Secretary of State. On 30 June 2000, Presbyterian Regional Healthcare Corp. transferred the Bradford Clinic along with certain assets to the physicians who practiced at the "Bradford Clinic" and WRHC. Between 1 July 2000 and 30 June 2005, WRHC operated and did business as the "Bradford Clinic," and the physicians and nurses who provided care to patients at the "Bradford Clinic" were employees of WRHC. During this time period, WRHC had no business relationship with the former corporation, Bradford Clinic, Inc. On 22 August 2002, WRHC filed a "Certificate of Assumed Name" with the Register of Deeds for Mecklenburg County stating that it would operate under the assumed name of the "Bradford Clinic."

B. MAG Mutual Insurance Company
Prior to filing the complaint, Plaintiff's attorney sent a letter addressed to "The Bradford Clinic, P.A.," explaining that he represented the Estate of Lauren Aline Ludemann in the pursuit of a claim against the Bradford Clinic and asking for the name of its professional liability insurance carrier. On 18 April 2005, Cheryl Kayes ("Ms. Kayes"), a senior litigation specialist at MAG Mutual Insurance Company ("MAG"), wrote Plaintiff's counsel, acknowledging receipt of his letter and informing him that "MAG Mutual Insurance Company provides professional liability coverage to 'The Bradford Clinic' and its physicians for claims arising out of professional services rendered." Between 18 April 2005 and 11 November 2005, Plaintiff and Ms. Kayes communicated several more times by telephone and written correspondence. Both parties referred to either "The Bradford Clinic" or "the Bradford Clinic" in their written communications. On 11 November 2005, Ms. Kayes notified Plaintiff's counsel that MAG had denied his client's claims against "The Bradford Clinic." Approximately seven months later, Plaintiff filed this action.

II. DISCUSSION
The standard of review of an order ruling on a motion to amend pleadings is whether the trial court abused its discretion.Henry v. Deen, 310 N.C. 75, 310 S.E.2d 326 (1984). It is "an abuse of discretion to deny leave to amend if the denial is not based on a valid ground." Coffey v. Coffey, 94 N.C. App. 717, 722, 381 S.E.2d 467, 471 (1989), disc. review improvidently allowed, 326 N.C. 586, 391 S.E.2d 40 (1990). Valid grounds for which a motion to amend may be denied are "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." Nations bank of North Carolina, N.A. v. Baines, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994) (citation omitted). In the absence of any declared reason for the denial of leave to amend, the appellate court may examine the apparent reasons for the denial. United Leasing Corp. v. Miller, 60 N.C.App. 40, 298 S.E.2d 409 (1982), disc. review denied, 308 N.C. 194, 302 S.E.2d 248 (1983). In this case, the trial court did not articulate its reasons for denying Plaintiff's motion to amend. Accordingly, we examine the apparent reasons for the denial to determine if they are valid.

A. Statute of Limitations
Plaintiff contends the Motion to Amend Complaint merely corrects a misnomer of an original party, and thus relates back to the date the original complaint was filed. We disagree.
Rule 15(c) of the North Carolina Rules of Civil Procedure provides that a claim asserted in an amended pleading relates back to the time of the original pleading. N.C. Gen. Stat. § 1A-1, Rule 15 (2005). However, this Rule applies only to the relation back of claims against the original parties and is not authority for the relation back of claims against a new party. Crossman v. Moore, 341 N.C. 185, 459 S.E.2d 715 (1995). Rule 15(c) may allow for the relation back of an amendment to correct a misnomer if the intended defendant was properly served and would not be prejudiced by the amendment. Liss v. Seamark Foods, 147 N.C. App. 281, 555 S.E.2d 365 (2001). A misnomer is a "[m]istake in name; giving incorrect name to person in accusation, indictment, pleading, deed or other instrument." Id. at 285, 555 S.E.2d at 368 (quoting Black's Law Dictionary 1000 (6th ed. 1990)).
In Liss, the plaintiff's motion to amend his complaint after the statute of limitations had expired was allowed to correct a misnomer of the defendant. The plaintiff filed a lawsuit against "Seamark Foods" after he became sick from oysters he had purchased at the store. A Certificate of Assumed Name filed with the Register of Deeds for Dare County provided that "Seamark Enterprises, Inc.," a North Carolina corporation, operated under the assumed name of "Seamark Foods." After the expiration of the statute of limitations, "Seamark Enterprises, Inc." filed a motion to dismiss the claims. In response, the plaintiff filed a motion to amend the complaint to substitute "Seamark Enterprises, Inc." as the defendant, and argued that the amendment should relate back to the filing of the original complaint. This Court held the plaintiff was not attempting to add an entirely new party, but was only correcting the name of the defendant. Because "Seamark Enterprises, Inc." engaged in business under the trade name of "Seamark Foods," they were not two separate and distinct entities but rather "one legal entity which uses two names." Id. at 286, 555 S.E.2d at 369. Therefore, the plaintiff's motion to amend his complaint after the statute of limitations had expired was allowed.
Conversely, in Franklin v. Winn Dixie Raleigh, Inc., 117 N.C. App. 28, 450 S.E.2d 24 (1994), aff'd per curiam, 342 N.C. 404, 464 S.E.2d 46 (1995), the plaintiff's attempt to amend his complaint after the statute of limitations had run was held to be an attempt to add a new party and not just to correct a misnomer. In the original complaint, the plaintiff named "Winn Dixie Stores, Inc." as the defendant. The plaintiff subsequently sought to amend his complaint to name the proper defendant, "Winn Dixie Raleigh, Inc." This Court concluded that the plaintiff was adding a new party because "[t]he named defendant in the original summons and complaint, `Winn Dixie Stores, Inc.', (sic) was the correct name of the wrong corporate party defendant, a substantive mistake which is fatal to this action." Id. at 40, 450 S.E.2d at 32. "Quite simply, plaintiffs sued the wrong corporation." Id. at 35, 450 S.E.2d at 28. Therefore, the plaintiff's motion to amend his complaint after the statute of limitations had expired was denied.
Unlike the plaintiff in Liss, Plaintiff in this case did not sue WRHC under its trade name "Bradford Clinic" but instead sued "Bradford Clinic, Inc." As in Franklin, it is undisputed that Bradford Clinic, Inc. was a separate and distinct legal entity from WRHC. Bradford Clinic, Inc. was a corporation that was registered with the North Carolina Secretary of State until it merged out of existence on 18 May 1994. WRHC was a separate corporate entity registered with the North Carolina Secretary of State. Thus, like the plaintiff in Franklin, Plaintiff here sued the wrong entity. Accordingly, Plaintiff's Motion to Amend Complaint was an attempt to add a new defendant to the action after the statute of limitations had expired. Therefore, if the court were to have granted Plaintiff's motion to add WRHC as a party, the action would have had to have been dismissed. See Estate of Fennell v. Stephenson, 354 N.C. 327, 554 S.E.2d 629 (2001) (stating that a plaintiff must name the party responsible for his alleged injury before the statute of limitations runs or the claim will be dismissed). As a result, Plaintiff's motion to amend was futile, and the trial court properly exercised its discretion in denying the motion.

B. Equitable Estoppel
Plaintiff further argues, however, that Bradford Clinic, Inc. should be equitably estopped from asserting the statute of limitations as a defense in this action. We disagree.
A defendant may rely on a statute of limitations as a defense against stale claims, "but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." Friedland v. Gales, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998). The essential elements of equitable estoppel are:
(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts.
Parker v. Thompson-Arthur Paving Co., 100 N.C. App. 367, 370, 396 S.E.2d 626, 628 (1990). The party asserting the defense must have:
(1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.
Id. at 370, 396 S.E.2d at 628-29.
The defendant in Hatcher v. Flockhart Foods, Inc., 161 N.C. App. 706, 589 S.E.2d 140 (2003), disc. review denied, 358 N.C. 234, 595 S.E.2d 150 (2004), was equitably estopped from invoking the statute of limitations as a defense where its identity was concealed from the plaintiff by the defendant's insurer. The plaintiff sustained injuries from a slip and fall at a Piggly Wiggly store. The plaintiff's attorney forwarded correspondence to Piggly Wiggly, Inc.'s corporate office to inform it that he was representing the plaintiff in a negligence claim against the store. The store was owned by Wallace Farm Mart, Inc. ("Wallace"), but was leased by Flockhart Foods, Inc. ("Flockhart"). Piggly Wiggly, Inc.'s insurer, which insured both Wallace and Flockhart, received notice of the plaintiff's claim and responded on behalf of Piggly Wiggly, Inc. During sixteen months of settlement negotiations, the insurer never indicated to the plaintiff that it represented any party other than Piggly Wiggly, Inc. or that Piggly Wiggly, Inc. was not the responsible party. The plaintiff filed a complaint naming "Wallace Farm Mart, Inc. formerly Piggly Wiggly of Wallace Inc." as the defendant. Id. at 707, 589 S.E.2d at 141. A courtesy copy of the complaint was also forwarded to the insurer on that same day. In correspondence the insurer sent the plaintiff two weeks after the complaint was filed, the insurer still referred to its insured as "Piggly Wiggly, Inc." Id. at 710, 589 S.E.2d at 143.
After the statute of limitations expired, Wallace filed a motion to dismiss the plaintiff's action, alleging it was not the proper defendant. The plaintiff filed a motion to amend its complaint to name Flockhart as the proper defendant. An order entered at a later term granted Flockhart summary judgment based upon the statute of limitations. On appeal, this Court concluded that generally insurers "do not act as agents for the insured when settling claims [but] . . . the rule was never intended to allow the insurer or the insured to circumvent liability in the manner presented by the facts in the instant case." Id. at 709-10, 589 S.E.2d at 142 (citation omitted). The Court imputed the insurance agent's misconduct to Flockhart and held Flockhart was equitably estopped from using the statute of limitations as a defense to Hatcher's claim.
The facts in the present case do not justify a similar outcome. When Plaintiff sent her initial correspondence to "Bradford Clinic, P.A.," Ms. Kayes corrected Plaintiff's mistake by responding on behalf of the "Bradford Clinic," the assumed name of WRHC registered with the Mecklenburg County Register of Deeds Office and appearing on the face of the insurance policy. Furthermore, Ms. Kayes fully acknowledged that MAG also insured the physicians of the Bradford Clinic who were alleged to have provided prenatal care to Plaintiff. During the ensuing months of communication between Plaintiff and Ms. Kayes, both parties continued to refer to the Bradford Clinic by its assumed name. Thus, unlike the insurance agent in Hatcher, Ms. Kayes never misrepresented or concealed who MAG insured. Furthermore, Plaintiff did not rely upon Ms. Kayes's conduct to Plaintiff's detriment; in fact, Plaintiff did not rely on Ms. Kayes's conduct at all. Had Plaintiff done so, she would have filed suit against the "Bradford Clinic," which would have effectively named WRHC as a defendant, as well as the doctors as individuals. Additionally, Ms. Kayes's conduct did not induce Plaintiff to delay filing suit. The last communication between Ms. Kayes and Plaintiff occurred seven months before Plaintiff filed her complaint on the day before the statute of limitations expired. This delay in filing cannot be attributed to Ms. Kayes's conduct in any way. Accordingly, there is no evidence of misconduct on the part of MAG or Ms. Kayes to impute to Defendant to equitably estop Defendant from asserting the statute of limitations as a defense to Plaintiff's claims.
Plaintiff also argues that the doctrine of estoppel should apply because a thorough inspection of the public records would not have shown that the Bradford Clinic had been transferred to WRHC. In Bailey v. Handee Hugo's, Inc., 173 N.C. App. 723, 620 S.E.2d 312 (2005), the plaintiff was injured when he fell at a convenience store known as Handee Hugo's. The plaintiff received letters from the insurer about the fall, indicating that its insured was Sampson-Bladen Oil, Co., Inc. The plaintiff incorrectly filed suit against Handee Hugo's, Inc. and Sampson-Bladen Oil, Co., Inc., neither of which owned, leased, or operated the premises. Discovery revealed that the premises was actually leased and operated by United Energy. Subsequent to this discovery, and after the expiration of the statute of limitations, the plaintiff filed a motion to amend in order to name United Energy, Inc. as a defendant to the lawsuit. The trial court denied the plaintiff's motion to amend because the amendment would have been futile due to the expiration of the statute of limitations. Summary judgment was also granted in favor of the defendants.
On appeal, this Court affirmed the trial court's decision and found the doctrine of estoppel did not apply because "[w]here all transfers of property interest were a matter of public record, it is not an onerous burden for this Court to impose the task of a title search upon one filing suit." Id. at 727, 620 S.E.2d at 315. However, unlike Bailey, where the proper defendant was the owner of the premises, here, the proper defendant was the employer of the alleged negligent physicians. Thus, unlike Bailey, where the ownership of the land on which the accident occurred, as well as the lease extended to the operator of the store, should have been a matter of public record, here, the name of the entity employing the alleged physicians need not be. Consequently, unlike Bailey, Plaintiff was not entitled to rely on the public records to determine the responsible party in this case.
Furthermore, Plaintiff filed suit against "Bradford Clinic, Inc. . . . d/b/a, Bradford Clinic[.]" Thus, Plaintiff was aware of the fact that "Bradford Clinic" was an assumed name. While Plaintiff was not entitled to rely on the public records, a search of the Mecklenburg County Register of Deeds Office would have revealed WRHC's "Certificate of Assumed Name," putting Plaintiff on notice that WRHC was operating under the assumed name of the "Bradford Clinic." Additionally, it was minimally burdensome for Plaintiff to ask MAG who its named insured was or to call the office where Plaintiff received medical care to ask who employed the doctors. Hence, since there was no active misrepresentation by MAG or Ms. Kayes; since WRHC's employment of the doctors was not required to be a matter of public record; and since due diligence would have revealed that Plaintiff needed to investigate WRHC as an employer of the doctors and staff of the Bradford Clinic, Defendant should not be estopped from asserting the statute of limitations as a defense in this action.

C. Service of Process
Finally, Plaintiff contends that Bradford Clinic, Inc. was WRHC's agent for the purpose of accepting service of process. In the alternative, Plaintiff contends WRHC made a general appearance in this matter rendering service of summons unnecessary. However, since no action was ever commenced against WRHC, whether WRHC received service of process or made a general appearance in the matter is irrelevant.
Under the North Carolina Rules of Civil procedure, "[a] civil action is commenced by filing a complaint with the court." N.C. Gen. Stat. § 1A-1, Rule 3 (2005). "Upon the filing of the complaint, summons shall be issued forthwith, and in any event within five days." N.C. Gen. Stat. § 1A-1, Rule 4 (2005). The summons and complaint shall be served in accordance with the statute of limitations. Osborne v. Walton, 110 N.C. App. 850, 431 S.E.2d 496 (1993). However, upon the filing of the complaint, "[a] court . . . may, without serving a summons upon him, exercise jurisdiction in an action over a person . . . [w]ho makes a general appearance in an action[.]" N.C. Gen. Stat. § 1-75.7 (2005). Additionally, "a civil action may also be commenced by the issuance of a summons when (1) [a] person makes application to the court . . . requesting permission to file his complaint within 20 days and (2) [t]he court . . . [grants] the requested permission." N.C. Gen. Stat. § 1A-1, Rule 3. The summons must be served along with the court's order in accordance with the prescribed statute of limitations. Estrada v. Burnham, 316 N.C. 318, 341 S.E.2d 538 (1986).
Here, although Plaintiff commenced an action by filing her original complaint prior to the expiration of the statute of limitations, the complaint did not name WRHC as a defendant. Since Plaintiff's motion to amend the complaint after the expiration of the statute of limitations was properly denied, WRHC was never made a party to that action. Additionally, Plaintiff did not commence an action against WRHC by making an application to the court requesting permission to file her complaint within 20 days and subsequently serving summons with the court's order upon WRHC. Therefore, since Plaintiff never actually commenced an action against WRHC, an analysis of whether WRHC is deemed to have accepted service of summons via Bradford Clinic, Inc. or whether WRHC waived service of summons by making a general appearance is unnecessary.
This case involves the tragic death of a four-day-old infant, and this Court's sympathies for the child and her mother are evoked. Unfortunately, our compassion cannot correct the substantive mistake that the wrong party was sued. Accordingly, for the foregoing reasons, the trial court's denial of Plaintiff's motion to amend is
AFFIRMED.
Judges McGEE and SMITH concur.
Report per Rule 30(e).